IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW WAGNER, # 08252-025, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-350-MJR |
| | ) |
| K. HOESE, M. EMERY, | ) |
| J. SIMS, J. JARRETT, | ) |
| M. SHEFFER, J.S. WALTON, | ) |
| PAUL M. LAIRD, HARRELL WATTS, | ) |
| and OWINGS, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, an inmate in the United States Penitentiary in Marion ("Marion"), brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Plaintiff is serving a 90-month sentence for a drug offense. He claims that Defendants violated his First, Fourth, and Fifth Amendment rights when they confiscated a law book and documents from his cell, subjected him to discipline, and removed him from a drug treatment program. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

The complaint states that Plaintiff's cell, located in the drug treatment unit of Marion, was searched twice on March 14, 2013. Defendant Hoese (drug treatment specialist) shook down the cell in the morning, and Defendant Officer Emery conducted another search in the evening. They removed several items, including a law book titled "Redemption Manual 4.5 Edition – How to be a Secured Party Creditor," and related forms titled "Waiver of Tort," and

"Notice to Public" (Doc. 1, p. 7).  Defendant Hoese charged Plaintiff with a disciplinary infraction for 305-Possession of Anything Unauthorized (Doc. 1, p. 1; Doc. 1-1, p. 6).  The first Incident Report states that Defendant Hoese found "a soft covered book that had been altered," which was the "Redemption Manual" (Doc. 1-1, p. 6).  She found it to contain information on "Sovereignty; Basic steps for redemption; [and] UCC Financing Statement Forms" and notes, "This is a well-known book used by sovereign citizens during their filing for universal [sic] commercial code." *Id*.  The second Incident Report records the discovery by Defendant Emery of a four-page document including the title, "Waiver of Tort Notice to Public," which was identified as a "sovereign citizen 'contract'" (Doc. 1-1, p. 7).  Plaintiff was again charged with a 305-unauthorized possession infraction.

On March 19, 2013, Plaintiff was found guilty of both unauthorized possession charges by Defendants Jarrett (Unit Counselor) and Sheffer, who conducted the disciplinary hearings (Doc. 1, p. 3; Doc. 1-1, pp. 6-7).  Plaintiff admitted having the items in his possession, but asserted he had a right to have them.  He was punished with phone restrictions of 15 days and 30 days on the respective infractions.

On March 27, 2013, Plaintiff appealed the disciplinary actions, noting that while 18 U.S.C. § 1521 prohibits the filing of false documents against a protected person, the statute does not prohibit the filing of "accurate and legal" documents (Doc. 1-1 p. 9).  He had not listed any "covered person" on any of the documents, nor did he possess unauthorized personal information.  He asserts First Amendment protection for his right to possess the blank legal forms and the book explaining how the forms should be used correctly.  *Id*.  Defendant Walton (Marion Warden) denied Plaintiff's request to expunge the disciplinary reports, based on the staff statements and "policy which dictates that possession of such materials (UCC) are [sic]

prohibited" (Doc. 1-1, p. 17).  Plaintiff appealed further, and Defendant Laird (BOP Regional Director) responded that Plaintiff was "not allowed to possess or receive" the type of sovereign citizen document found in his cell (Doc. 1-1, p. 12).  In Plaintiff's further appeal, he states he had obtained the book through the mail "quite a while ago" after it was ordered for him by a friend (Doc. 1-1, p. 14).  He inquired as to whether he would be prohibited from "Petition[ing] the Government to obtain Sovereignty Redemption, should [he] choose" (Doc. 1-1, p. 16).  Finally, Plaintiff states that Defendant Watts (BOP National Inmate Appeals Officer) denied his appeal in accordance with the allegedly unconstitutional policy (Doc. 1, p. 3).

In the complaint, Plaintiff asserts that he had the materials in his possession for "scholarly research," and did not engage in any unlawful activity such as filing a fraudulent claim.  Further, he has the right to possess the books and materials "for the purpose of which they were intended" (Doc. 1, p. 7).

Following the discovery of the book and documents in Plaintiff's cell, Defendant Owings (Drug Treatment Program Manager) and Defendant Hoese retaliated against Plaintiff for having this "subversive" anti-government material, by terminating his participation in the drug treatment program (Doc. 1, p. 7).  If Plaintiff had completed this program, he would have earned up to one year of "good time" credit against his sentence.  Defendant Owings told Plaintiff that "foreign nationals cannot get good time off and neither should sovereign citizens, and that she would ensure that [Plaintiff] would never complete the drug treatment program." *Id*.  Plaintiff's exhibits indicate that he was told he would have to repeat a segment of the program (Phase 1) rather than be advanced to the next phase (Doc. 1-1, pp. 20, 23).

As relief, Plaintiff seeks damages, credit for participation in the drug rehabilitation program as well as the good time credit he would have earned, and injunctive relief

to prevent further enforcement of the "non-policy" restricting his possession of the materials (Doc. 1, p. 8).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal causes of action, which shall receive further review:

**Count 1:** Defendants Hoese and Emery confiscated Plaintiff's book and documents, and Defendants Jarrett, Sheffer, Walton, Laird, and Watts imposed and enforced disciplinary sanctions[1] upon him and refused to return the items, pursuant to a Marion and/or BOP policy forbidding prisoners from possessing "sovereign citizen" materials, in violation of Plaintiff's First Amendment rights;

**Count 2:** Defendants Owings and Hoese terminated Plaintiff from the drug treatment (RDAP) program in retaliation for his assertion of his First Amendment right to possess the book and documents.

As to **Count 1**, the prison policy or practice referenced in the responses to Plaintiff's grievances, which prohibits the possession of "sovereign citizen" documents, indeed imposes a restriction on prisoners' First Amendment rights. Such a policy may be permissible in the prison context, however, if it is reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Courts consider four factors in making this "reasonableness" inquiry: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether inmates have an alternative means of exercising the right; (3) what effect accommodating the

---

[1] Because the disciplinary action did not include the loss of good conduct credits or otherwise affect the fact or duration of Plaintiff's custody, this claim is not barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). See *Simpson v. Nickel*, 450 F.3d 303, 307 (7th Cir. 2006); *DeWalt v. Carter*, 224 F.3d 607, 613, 616-18 (7th Cir. 2000).

exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. *Id*.

The Seventh Circuit has observed:

> Freedom of speech is not merely freedom to speak; it is also freedom to read. *Stanley v. Georgia,* 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Lamont v. Postmaster General,* 381 U.S. 301, 306-07, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); *Conant v. Walters,* 309 F.3d 629, 643 (9th Cir.2002). Forbid a person to read and you shut him out of the marketplace of ideas and opinions that it is the purpose of the free-speech clause to protect. Not that there aren't valid penological reasons for limiting prison inmates' access to certain types of book.

*King v. Federal Bureau of Prisons*, 415 F.3d 634, 638 (7th Cir. 2005) (reversing in part dismissal of case under 28 U.S.C. § 1915A, and remanding for further consideration of whether restriction of a computer-programming book was justified by the need to protect the prison's computer system). Examples of legitimately prohibited materials include books detailing famous prison escapes or details on drug formulas. *See Munson v. Gaetz*, 673 F.3d 630 (7th Cir. 2012) (inmate could not have personal copy of *Physicians' Desk Reference* or *Complete Guide to Prescription & Non-Prescription Drugs*, even though same materials were available in prison law library).

Plaintiff's claim involves a "law book" that references the Uniform Commercial Code – a model statute that has been enacted in one form or another by every state – and contains instructions to prepare and file documents which invoke the UCC, but are of dubious validity and legality.[2] Plaintiff asserts that to date, he has not actually prepared or submitted any

---

[2] The "Redemption Manual" confiscated from Plaintiff is advertised for sale on a website which promises it "will teach you about the process that will take you from being A DEBTOR SLAVE ON THE PLANTATION to a SECURED PARTY CREDITOR." Http://www.mccutcheons.info/redemption-manual-4-5-edition.html (last visited April 8, 2014). The advertisement continues: "It will walk you through the beginning documents set-up; show you how to file your UCC-1 to become the Secured Party/ Creditor and how to charge back to the Secretary of Treasury your birth certificate to 'charge-up' your UCC Contract Trust Account with simple forms and instructions. You will also be shown how to 'do

such documents for filing, and wishes merely to study this material. However, he also indicates that he may want to file redemption documents in the future.

At least one court of appeals has recognized the "rampant problem of prisoners' filing of fraudulent liens," which this Court has also observed. *See Jones v. Caruso*, 569 F.3d 258, 268-69, 278-79 (6th Cir. 2009) (affirming district court's issuance of preliminary injunction barring the enforcement of broad policy banning prisoners from possessing all UCC-related material, where record indicated alternative means were available to regulate prisoners' ownership and use of this material).

In light of the problems presented by the filing of fictitious, vexatious, and illegal liens by inmates, a prison may indeed have a legitimate penological interest in restricting the possession of certain "sovereign citizen" materials. However, further factual development is necessary before the Court may determine the merits of the claim in this case. Therefore, dismissal of Count 1 is not appropriate at this juncture. The First Amendment claim shall be allowed to proceed at this time against the Defendants who were directly involved in confiscating the materials (Hoese and Emery), who found him guilty of the disciplinary infractions (Jarrett and Sheffer), and against those who are in positions to promulgate or enforce the policy challenged by Plaintiff (Walton, Laird, and Watts). These final three Defendants are also included for the purpose of implementing any injunctive relief to which Plaintiff may ultimately be entitled if he should prevail on the First Amendment claim. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

Defendant Sims, whose involvement (according to the complaint) was limited to

---

your own' Security Agreement, Power of Attorney, Copyright Notice, Hold-Harmless Agreement, UCC-1 and UCC-3 to take back control of your, 'Debtor/Straw-man' and all of the collateral and property."

supervisory review of the disciplinary charges (Doc. 1, p. 2), shall be dismissed from the action. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (there is no supervisory liability in a civil rights action).

Further, **Count 1** shall proceed only on Plaintiff's First Amendment claim, and shall not include a due process claim or a Fourth Amendment claim. Plaintiff received all the process to which he was due, in the course of his administrative challenges to the minor disciplinary sanctions imposed for possession of unauthorized materials, despite the fact that he was unsatisfied with the outcome. In any case, he can only prevail on a claim of legitimate possession of the confiscated materials and innocence of the disciplinary charges if his First Amendment claim is successful. In this context, a due process claim is duplicative of the First Amendment claim, and subject to dismissal. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional labels"); *Williams v. Snyder*, 150 Fed. App'x 549, 552-53 (7th Cir. 2005) (dismissing equal protection, access to courts, due process, and Eighth Amendment claims as duplicative of retaliation and freedom of religion claims).

Plaintiff cannot maintain a Fourth Amendment claim arising from the searches of his cell, as he has no expectation of privacy in the cell or its contents. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.").

For these reasons, Plaintiff's due process and Fourth Amendment claims shall be dismissed from Count 1 and from the action.

**Count 2**, over Plaintiff's alleged termination[3] from the drug treatment program, shall proceed only on a theory of retaliation. Plaintiff had no constitutional right to remain in the RDAP program, because prison officials are vested with discretion to determine whether any inmate may participate in this treatment program. *See Lopez v. Davis*, 531 U.S. 230 (2001). Even though the adverse action regarding Plaintiff's participation in the RDAP program does not violate the Constitution in and of itself, if the action was taken in retaliation for the exercise of a constitutionally protected right, then it may give rise to a civil rights claim. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 [and likewise, *Bivens*] even if the act, when taken for different reasons, would have been proper.")).

Finally, Plaintiff shall note that good conduct credits cannot be awarded in the context of a civil rights case. Such a remedy may only be sought in a habeas corpus case. *See Muhammad v. Close*, 540 U.S. 749, 750-51 (2004) ("[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus") (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). That being said, the merits of Plaintiff's request for sentence credit where he never completed the RDAP program appear questionable, at best. *See Lopez v. Rios*, __ F. App'x __, No. 13-2749, 2014 WL 554547 (7th Cir. Feb. 13, 2014) (habeas challenge to the denial of early release for prisoner who had completed residential drug treatment program was "futile" since prisoner had no claim that his continued custody violated the Constitution or federal law).

---

[3] Plaintiff's documentation suggests that he may not have been terminated outright from the program, rather, that he might have remained in it had he agreed to repeat Phase 1. Nonetheless, if the refusal to promote Plaintiff was motivated by retaliation, he may still have a sustainable constitutional claim.

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

**Disposition**

Plaintiff's due process and Fourth Amendment claims, contained in **Count 1**, are **DISMISSED** with prejudice.  **Count 1** shall proceed only on the First Amendment claim. **Count 2** shall proceed only on the retaliation claim.

Defendant **SIMS** is **DISMISSED** from the action with prejudice.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **HOESE, EMERY, JARRETT, SHEFFER, WALTON, LAIRD, WATTS,** and **OWINGS**; the Clerk shall issue the completed summons.  The United States Marshal **SHALL** serve Defendants **HOESE, EMERY, JARRETT, SHEFFER, WALTON, LAIRD, WATTS,** and **OWINGS** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[4]  All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or

---

[4] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into

a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 17, 2014**

                                             s/ MICHAEL J. REAGAN
                                             United States District Judge